IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JEANINE D. GIBSON-REID,** <br><br> *Plaintiff,* <br><br> v. <br><br> **LENDMARK FINANCIAL SERVICES, LLC,** <br><br> *Defendant.* | Case No. 2:19-cv-02859-JDW |

## MEMORANDUM

Defendant Lendmark Financial Services, LLC ("Lendmark") seeks to compel arbitration of this action pursuant to an arbitration agreement between it and Plaintiff Jeanine Gibson-Reid ("Gibson-Reid"). The arbitration agreement appears valid, and this dispute falls within its scope. The Court will therefore grant Lendmark's Motion to compel arbitration and stay this case pending resolution of arbitration proceedings.

**I.  FACTUAL BACKGROUND**

On April 5, 2019, Gibson-Reid obtained a loan from Lendmark in the amount of $1,723.73. (ECF No. 1-5 ¶ 9.) Gibson-Reid signed a copy of the Combination Note, Security Agreement and Federal Disclosure Statement (the "Loan Agreement"), which contained the written terms and conditions governing the loan. (*Id.* at ¶ 13 & Ex. A.) The same day, the Parties also entered into an Arbitration Agreement. (ECF No. 5-4.)

The Arbitration Agreement defines a "Claim" broadly, to include "any pre-existing, present, or future claim, dispute, or controversy of any kind or nature between you and us, including but not limited to … any claim, dispute, or controversy arising out of or relating to any agreement or relationship with us of any kind … claims based upon any theory of law, contract,

tort, fraud, statute, regulation, common law … [or] claims relating to the origination, handling, billing, servicing, collection, or termination or acceleration of any loan or other extension of credit ….." (*Id.*)  The Arbitration Agreement provides that either party "may bring an action, including a summary or expedited motion, to compel arbitration of a Claim subject to arbitration ….  Such action may be brought at any time, even if any the [sic] claim is part of a lawsuit." (*Id.*)

Gibson-Reid filed suit in the Delaware County Court of Common Claims under the Consumer Discount Company Act ("CDCA"), Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("CPL"), Pennsylvania's Loan Interest and Protection Law ("LIPL"), and common law claims for breach of contract, common fraud, and negligent misrepresentation.  Lendmark removed the action to this Court and now moves to compel arbitration per the Parties' Arbitration Agreement.

## II. LEGAL STANDARD

In ruling on a motion to compel arbitration, a district court must determine whether the defense of arbitrability is apparent on the face of a complaint or whether the resolution of the motion requires the Court to consider facts outside the complaint.  In the former scenario, the Court should apply a standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6), whereas in the latter scenario, the Court should apply the standard for a motion for summary judgment under Fed. R. Civ. P. 56.  *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773-74 (3d Cir. 2013).  Here, the Complaint does not reference the Arbitration Agreement, and Lendmark has placed it before the Court as an exhibit to a declaration.  Therefore, the Court considers the motion under the summary judgment standard.

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *Dodson v. Coatesville Hosp. Corp.*, No. 18-3065, --- Fed. App'x ----, 2019 WL 2338461, *2 n.6 (3d Cir. June 3, 2019) (quotation omitted).

### III. ANALYSIS

The Federal Arbitration Act (FAA) renders arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act's principal purpose "is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S. Ct. 1740, 1748, 179 L. Ed. 2d 742 (2011) (internal quotations omitted). Supreme Court precedent compels district courts to "rigorously enforce agreements to arbitrate[.]" *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 458 (2003); *Epic Sys. Corp. v. Lewis*, --- U.S. ---, 138 S. Ct. 1612, 1621 (2018). The FAA specifically requires that courts, upon motion by a party, stay any proceeding that involves an issue subject to arbitration under a written arbitration provision. 9

3

U.S.C. § 3. Once a court concludes that a valid arbitration agreement exists, and that the dispute falls within the scope that agreement, the court must order the parties to arbitrate without reviewing the merits of the case. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985); *Gay v. CreditInform*, 511 F.3d 369, 386 (3d Cir. 2007) ("the district court is not to consider the merits of the claims giving rise to the controversy, but is only to determine … whether there is a valid agreement to arbitrate.") (quoting *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir.1997)). Courts may only invalidate arbitration agreements based upon generally applicable contract defenses. 9 U.S.C. § 2; *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). Gibson-Reid, as the party resisting arbitration, bears the burden of proving that the claims at issue are unsuitable for arbitration. *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Here, the evidence demonstrates that Gibson-Reid and Lendmark entered into a valid agreement to arbitrate. In addition, this dispute falls within the scope of the Arbitration Agreement. The Agreement applies broadly to "any pre-existing, present, or future claim, dispute, or controversy of any kind or nature between you and us …." (ECF No. 5-4.) Certainly, this case is a dispute between Gibson-Reid and Lendmark. Moreover, the Arbitration Agreement specifies that its broad language reached any "claim, dispute, or controversy arising out of or relating to any agreement or relationship with us of any kind" including "claims based upon any theory of law, contract, tort, fraud, statute, regulation, common law … ." (*Id.*) Gibson-Reid's claims arise out of her Loan Agreement and assert the very types of claims that the Arbitration Agreement specifies. Finally, the Arbitration Agreement extends to any "claims relating to the origination, handling, billing, servicing, collection, or termination or acceleration of any loan or other extension of credit …." (*Id.*) Gibson-Reid's claims arise from the formation and attempted cancellation of

the Loan Agreement, which constitute the origination, handling, servicing, and termination of a loan or extension of credit. They therefore fall within the scope of the Arbitration Agreement.

Gibson-Reid does not dispute that she signed the Arbitration Agreement or that her claims fall within its scope. Moreover, the arguments that she does make do not save her from her agreement to arbitrate. First, she argues that Lendmark did not provide five days' notice before petitioning a court to order that arbitration proceed, as she says the FAA requires. While the FAA does provide that "[f]ive days' notice in writing of such application shall be served upon the party in default" (9 U.S.C. § 4), courts in this District have held that Section 4 of the FAA is not applicable where, as here, the plaintiff has already brought an action in court. *See, e.g., Weinstein v. Equitable Life Assurance Soc'y of U.S.*, No. CIV. A. 96-CV-3614, 1996 WL 557321, at *3 (E.D. Pa. Sept. 26, 1996). Rather, Section 4 applies only when a party brings an independent action "whose sole purpose is to compel arbitration." *Zosky v. Boyer*, 856 F.2d 554, 556 (3d Cir. 1988), *cert. denied*, 488 U.S. 1042 (1989). Here, because Gibson-Reid has already initiated a proceeding in this Court, Section 3 of the FAA controls. *Id*. Section 3 does not contain a notice requirement. Gibson-Reid's argument therefore fails.

Second, Gibson-Reid argues that under Section 4 of the FAA, Lendmark must demonstrate that Gibson-Reid has defaulted on an agreement to arbitrate. However, because Section 4 does not apply here, this argument is of no moment. In any event, by filing this lawsuit, Gibson-Reid has demonstrated that she refuses to arbitrate the dispute. *See PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3d Cir. 1995); *First Family Fin. Servs. v. Fairley*, 173 F. Supp. 2d 565, 572 (S.D. Miss. 2001) ("The Court cannot conceive of a more explicit refusal to arbitrate than the bringing of an arbitrable claim in state court that one has contractually agreed to arbitrate"). She has therefore defaulted on an obligation to arbitrate under the FAA.

Third, Gibson-Reid asks this Court to invalidate the Arbitration Agreement because its cost provision is unconscionable and contrary to the statutory language of the CPL, which allows the Court to award a plaintiff reasonable attorney fees and costs, as well as treble damages. Under the "Costs" section, the Arbitration Agreement states that a party "may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines." (ECF 5-4.) This language is not contrary to that of the CPL, nor does it preclude an arbitrator's discretion to award attorney's fees and costs under the CPL. The "Costs" provision therefore does not render the Arbitration Agreement unconscionable.

Fourth, and finally, Gibson-Reid argues that public policy voids the Arbitration Agreement. However, she fails to specify an applicable policy outside of "maintain[ing] the fee shifting remedy for the protection of consumers." (ECF No. 7 at 8.) This argument merely rehashes her unconscionability argument, and it fails for the same reason.

## IV. CONCLUSION

Gibson-Reid entered into a valid, enforceable arbitration agreement that encompasses this dispute. Accordingly, the Court will grant the motion and stay this case while the parties pursue arbitration. An appropriate order will follow.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

Dated: August 30, 2019

JOSHUA D. WOLSON, J